IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEGAN TAYLOR, WENDY SMOTHERS, BHAVIK LAKHANI, MASSIMILIANO AGOSTINI, and OCTAVIO CHAVES, individually and on behalf of the general public and those similarly situated, <br><br> Plaintiffs, <br> v. <br><br> DAVE'S KILLER BREAD, INC., FLOWERS FOODS, INC., and FLOWER BAKERIES LLC, <br><br> Defendants. | Case No. 23 C 16439 <br><br> Honorable Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Dave's Killer Bread, Inc., Flowers Foods, Inc., and Flowers Bakeries, LLC's Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6). Plaintiffs Megan Taylor, Wendy Smothers, Bhavik Lakhani, Massimiliano Agostini, and Octavio Chaves bring a class action lawsuit claiming that Defendants used unlawful and deceptive practices in labeling and marketing their bread, bagel, and burger bun food products. The Complaint alleges that Defendants improperly promoted that their products had a certain amount of protein, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count I), the Illinois Uniform Deceptive Trade Practices Act (UDTPA) (Count II), and the New York General Business Law Section 349 (Count III) and Section 350 (Count IV). Defendants also assert claims for breach of express warranty (Count V), common law fraud, deceit, and/or misrepresentation (Count VI), and unjust enrichment (Count VII) arising from this conduct.

Defendants' motion to dismiss [29] is granted in part and denied in part. While Plaintiffs have Article III standing, they have failed to sufficiently plead future harm. Thus, the request for injunctive relief is dismissed without prejudice. Defendants' preemption arguments fail under Seventh Circuit case law and Plaintiffs have met the pleading requirements for each of their counts, so the motion to dismiss is denied in all other respects.

### Discussion

Plaintiffs assert claims that Defendants used unlawful and deceptive practices by improperly labeling and marketing their consumer food products as having a certain amount of protein. Pursuant to the Food, Drug, and Cosmetic Act (FDCA), the Federal Drug Administration (FDA) adopted regulations governing the nutritional labeling of food. The FDA requires manufacturers to provide nutritional information on products intended for human consumption,

including information about the level of certain nutrients such as protein, in a product's nutrition facts panel. 21 C.F.R. § 101.9(c). The FDCA prohibits false or misleading nutritional statements on packaged food and dictates what claims a manufacture can make about a food's nutrient content outside of the nutrition facts panel. 21 U.S.C. § 343(r)(1)(A); 21 C.F.R. § 101.13(b).

Relevant to this suit, the regulations provide two methods for calculating the amount of protein in a product. 21 C.F.R. § 101.9(c)(7). A manufacturer is required to list the amount of protein in the nutritional fact panel as the number of grams of protein per serving. *Id.* This can be calculated via the nitrogen method[1] or based on the corrected amount of protein per serving as adjusted for protein digestibility using the protein digestibility-corrected amino acid score (PDCAAS). *Id.* When a product's label includes a statement regarding the number of grams of protein in a serving (a nutrient content claim), Section 101.9 requires the manufacturer add the percent daily value in the nutrition facts panel. *Id.* § 101.9(c)(7)(i). The percent daily value is the recommended amount of nutrients to consume or not to exceed daily. *Id.* The percent daily value must be calculated using the corrected amount of protein as calculated by using PDCAAS. *Id.* § 101.9(c)(7)(i).

Plaintiffs advance two main theories that led reasonable customers to believe that sixteen of Defendants' products contained high quality protein and provided more grams of protein per serving than in actuality. First, Plaintiffs assert that Defendants unlawfully made a protein content claim on the front of the products' packaging without complying with the regulatory requirements set forth in 21 C.F.R. § 101.9(c)(7)(i)-(iii). Second, that Defendants misled reasonable consumers regarding the quality of protein in their products and its contribution to consumers' daily protein needs by omitting the PDCAAS-corrected percent daily value as required.

In this motion, Defendants seek dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion provides for dismissal of a claim based on lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "If the federal courts lack subject matter jurisdiction, then [they] can go no further and must dismiss the suit." *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023). "A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the sufficiency of a complaint for purposes of a motion to dismiss, the Court "construe[s] it in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in [the nonmoving party's] favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (*quoting Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010)).

---

[1] When calculated based on the nitrogen method, the protein content is "calculated on the basis of the factor 6.25 times the nitrogen content of the food as determined by the appropriate method of analysis as given in the 'Official Methods of Analysis of the AOAC International,' except when official AOAC procedures described in this paragraph (c)(7) require a specific factor other than 6.25, that specific factor shall be used." 21 C.F.R. § 101.9(c)(7).

**Standing**

Standing "is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (cleaned up). Plaintiffs must have a personal stake in the case and demonstrate standing with respect to each form of requested relief. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Defendants argue that Plaintiffs do not have standing because: (1) they have failed to plead reliance or injury; (2) they cannot assert claims for products they did not purchase; and (3) they have not pled harm requiring injunctive relief.

Defendants' first argument fails because Plaintiffs have plausibly pled reliance and injury. To establish standing under Article III, a plaintiff must show they have injury, causation, and redressability. *Friends of the Earth*, 528 U.S. at 179. The Complaint alleges that each Plaintiff purchased Defendants' products after reading and relying on the veracity of the label that the products included a specific amount of protein per serving. Each Plaintiff believed the Defendants' statement about the amount of protein per serving and purchased at least one product based on that representation, incurring economic damages. These allegations are enough to show reliance and injury.

Defendants also contend that Plaintiffs do not have standing to assert claims against Defendants for products they did not purchase. The Complaint includes allegations involving sixteen of Defendants' products. Plaintiffs, collectively, have only bought two of the sixteen named products. Courts in this district have frequently accepted the argument that "a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar.'" *See Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at *6 (N.D. Ill. Aug. 18, 2017); *Wagner v. Gen. Nutrition Corp.*, 2017 WL 3070772, at **5-6 (N.D. Ill. July 19, 2017). Furthermore, "[a] substantial number of courts have decided that a plaintiff may have standing to assert claims on behalf of class members based on products he or she did not purchase as long as the products and alleged misrepresentations about a purchased product are substantially similar. In those cases, the substantial similarity determination is a context-specific analysis, but frequently entails reference to whether the challenged products are of the same kind, whether they are composed of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." 1 McLaughlin on Class Actions § 4:28 (21st ed. 2024). Courts "consider not only physical similarities but also the misrepresentations' similarities." *Mednick v. Precor, Inc.*, 2014 WL 6474915, at *3 (N.D. Ill. Nov. 13, 2024). This Court elects to follow these decisions and considers whether the products and alleged misrepresentations are substantially similar. Here, all the products are grain food items, such as bread, bagels, and burger buns, sold by Defendants that have allegedly misleading labels. Specifically, the protein claims made on the front label of each product purportedly misleads consumers as to the quality and amount of protein per serving. Given that the alleged misrepresentations are substantially similar, the Court finds that Plaintiffs have standing as to all sixteen of the grain products alleged. *See e.g.*, *Ulrich*, 2017 WL 3581183, at *6 (finding standing for unpurchased products based on similarly alleged protein misrepresentations).

Defendants' final argument on standing – that Plaintiffs have failed to plead future harm – has traction. Here, Plaintiffs are seeking relief from all seven counts in the form of a temporary or permanent injunction. To pursue injunctive relief, a plaintiff "must face a real and immediate threat of future injury[.]" *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (cleaned up). "[T]he majority of courts in this district have concluded that a plaintiff's awareness of the alleged misrepresentations makes any future harm speculative, precluding that plaintiff from pursuing injunctive relief." *See In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig.*, 718 F. Supp. 3d 800, 810 (N.D. Ill. Feb. 21, 2024) (cleaned up). The Court follows the Seventh Circuit's reasoning in *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014). There, the Seventh Circuit noted that a plaintiff who is aware of a defendant's deceptive practices is not likely to be harmed by those practices in the future and thus lack standing for injunctive relief. *Id.* at 741. Having said that, the Seventh Circuit has found future harm can, at times, be pled in consumer fraud cases. In contrast to *Camasta*, the Seventh Circuit recently held in *Kahn v. Walmart Inc.*, that while a plaintiff had not alleged future harm, it "may be possible for plaintiff to plead a likelihood of future harm, particularly in light of the injuries to consumers routinely caused by bait-and-switch pricing schemes[.]" 107 F.4th 585, 606 (7th Cir. 2024). In *Kahn*, the Seventh Circuit reversed the dismissal of the operative complaint with prejudice because it was not futile for plaintiff to amend the complaint and state facts that could support future injury. *Id.* In line with *Kahn*, the Court finds that permitting leave to amend would not be futile. Though somewhat implausible at first blush, Plaintiffs will be given an opportunity, if they so choose, to allege that they intend to keep buying Defendants' products and that they would be unable to avoid future injury after having discovered Defendants' labeling practices. *Id.* At this time, however, Plaintiffs' request for injunctive relief must be dismissed without prejudice. *Camasta*, 761 F.3d at 741.

### Preemption

Counts I through IV of the Complaint arise under Illinois and New York consumer protection statutes. The FDCA does not provide a private right of action, meaning Plaintiffs may only seek relief pursuant to related state-law claims. *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011). "The latter right however, is tightly circumscribed by the FDCA's express preemption of state-law theories that impose requirements 'not identical' to its own requirements." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019); 21 U.S.C. § 343-1. Thus, to avoid preemption under the FDCA, a state law claim related to misleading labeling must allege a violation of the FDCA or its regulations. *Turek*, 662 F.3d at 426. Defendants advance two theories of preemption: (1) that the front label protein content claim is expressly preempted; and (2) that claims concerning consumers who were misled by failing to include the PDCAAs-correct percent daily value for protein is impliedly preempted by *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

Taking express preemption first, Plaintiffs claim that Defendants unlawfully made a protein claim on the front of the package without complying with the regulatory requirements for making a protein claim set forth in 21 C.F.R. § 101.9(c)(7)(i)-(iii). Defendants argue that numerous district courts across the country have found that the theory Plaintiffs raise regarding the front label protein content is preempted. However, this Court is bound by Seventh Circuit precedent, specifically *Benson* and *Bell v. Publix Super Markets, Inc.*, regarding whether this theory is expressly preempted. 944 F.3d at 645; 982 F.3d 468 (7th Cir. 2020). The Seventh Circuit found in *Benson*

4

that FDCA preemption is "an affirmative defense upon which the defendants bear the burden of proof." 944 F.3d at 645. Affirmative defenses do not justify dismissal under Rule 12(b)(6) but instead should be raised as a Rule 12(c) judgment on the pleadings. *Id.* Accordingly, in *Benson*, the Seventh Circuit found that the district court erred by dismissing the action based on FDCA preemption. *Id.* (affirming the judgment on other grounds).

The Seventh Circuit again addressed express preemption under the FDCA a year later, in the context of a multidistrict litigation regarding a label on parmesan cheese that claimed it was "100%" cheese. *Bell*, 982 F.3d at 473. The district court dismissed the claims on two grounds – the front label claims were ambiguous, and a reasonable consumer would know there were added ingredients. *Id.* at 475. On appeal, defendants also argued that federal preemption provided an additional ground for dismissal. *Id.* at 476. The Seventh Circuit disagreed and found that all three arguments, including preemption, were not grounds for dismissal. *Id.* When the FDCA lists "labeling disclosures that are affirmatively required, state law may not tack on further required disclosures that the federal standard does not mention." *Id.* at 484. The Seventh Circuit held that there was nothing being added by state law, as the FDCA prohibited false or misleading labeling of food products. *Id.* Giving an illustration, the Seventh Circuit noted that express preemption prohibits a state from requiring additional information on labels but does not preempt a claim if the seller voluntarily adds information and lies. *Id.* Here, Defendants voluntarily added the grams of protein on the front label of the products; this information is not required under either federal or state law. Accordingly, this theory is not preempted under Seventh Circuit precedent and preemption does not justify dismissal under Rule 12(b)(6).

Defendants' second preemption argument contends that Plaintiffs' theory – that Defendants misled reasonable consumers by omitting the PDCAAS-corrected percent daily value – is impliedly preempted under *Buckman*. 531 U.S. 341. In *Buckman*, plaintiffs brought a fraud claim based on an alleged misrepresentation during the FDA approval process for a medical device – essentially a claim of fraud on the FDA. The Supreme Court held that state-law causes of action that arise "solely from the violation of FDCA requirements" are impliedly preempted. *Id.* at 348. However, the Supreme Court distinguished cases in which a plaintiff's claim arises from traditional state tort law principles and not "solely from the violation of FDCA requirements." *Id.* at 352. Such claims are not preempted – even if the "state-law causes of actions ... parallel federal safety requirements." *Id.* at 353.

Plaintiffs' mislabeling claims about the percent daily value are not impliedly preempted by the FDCA or under *Buckman* because the claims are grounded in traditional state law principles of liability, such as breach of express warranty and fraud that predate the relevant FDCA requirements. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 556-57 (7th Cir. 2010) (finding claims based in state tort law principles were not impliedly preempted by *Buckman*). Contrary to Defendants' arguments, the claims do not depend on violations of requirements or prohibitions imposed by the FDCA – they parallel them. *Id.*; *see e.g.*, *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Pro.*, 2017 WL 1836443, at *7 (N.D. Ill. May 8, 2017) (finding claims that defendants improperly marketed products were not preempted under *Buckman* because they are traditionally grounded in state law principles and do not depend on violations of the FDCA). Instead, the claims focus on Defendants' fraud and deceit in advertising, labeling, and marketing of their products as having a certain amount of protein. Further, the Seventh Circuit has

5

found the affirmative defense of preemption does not justify dismissal on a 12(b)(6) motion. *Benson*, 944 F.3d at 645. Accordingly, the Court does not find implied preemption here.

### Sufficiency of the Allegations

Defendants also move to dismiss Plaintiffs' claims by arguing that pleading standards have not been met. In summary, Defendants contend that: (1) Plaintiffs' Illinois Consumer Fraud and Deceptive Business Practices Act (Count I), UDTPA (Count II), New York General Business Law (Count III and IV), and unjust enrichment (Count VII) claims have failed to plead deception and materiality; (2) Plaintiffs' fraud (Count VI) and fraud-based unjust enrichment (Count VII) claims fail to meet Rule 9(b)'s heightened standard; (3) Plaintiffs fail to state a claim for breach of express warranty (Count V); and (4) Plaintiffs' unjust enrichment claim (Count VII) fails as it is not a stand-alone claim. These arguments are unpersuasive – Plaintiffs have pled plausible claims for relief.

First, Plaintiffs have alleged deception and materiality for Counts I-IV and VII. "[A] practice is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Benson*, 944 F.3d at 646 (cleaned up). To determine the likelihood of deception, courts use a reasonable consumer standard, which looks at the alleged deceptive act in light of the totality of the information made available to the consumer. *Id.* As determined by the Seventh Circuit, plaintiffs' claims "survive if they have plausibly alleged that the defendants' front label likely lead a significant portion of reasonable consumers to falsely believe something that the back labels belie." *Bell*, 982 F.3d at 476. Here, the front label noted that the food products included a certain amount of grams of protein. The back label did not provide additional information about how much of the recommended daily value for protein was provided by these grams – as required by statute. As a result, Plaintiffs sufficiently allege that Defendants' labels are unlawful and deceptive because they misled reasonable consumers into believing that a serving of Defendants' products would give them the grams of protein represented on the front label. Further, these representations were material and caused damages. This is because Plaintiffs alleged that, had they known the percent daily value or the amount of protein per serving was less, they would not have purchased the products. *See e.g.*, *Ulrich*, 2017 WL 3581183, at **8-9 (denying 12(b)(6) motion to dismiss consumer fraud claims).

Additionally, the claims sounding in fraud comply with the heightened pleading standard. For these claims, Rule 9(b) requires a party to state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Seventh Circuit has held that a plaintiff must describe the "who, what, when, where, and how" of the fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreens Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011). Here, the Complaint alleges that Defendants (the who) perpetrated fraud (the what) by misrepresenting the amount of protein and failing to include the percent daily value on the back label (the how) while selling their products in grocery stores throughout California, Illinois, and New York (the where) from 2018 to present (the when). Thes assertions are expanded upon in the Complaint and meet the particularity requirement of Rule 9(b).

Defendants' final arguments, that Plaintiffs fail to state a claim for breach of express warranty and unjust enrichment, are unavailing. To state a claim for breach of express warranty,

a complaint must allege that a seller: (1) made an affirmation of fact or promise relating to the goods; (2) which was part of the basis for the bargain; and (3) guaranteed that the goods would conform to the affirmation or promise. *Rudy v. D.F. Stauffer Biscuit Co.*, 666 F. Supp. 3d 706, 721 (N.D. Ill. Mar. 30, 2023). The Complaint alleges that Defendants made an affirmation that their products had a certain amount of protein, reflected in the products' marketing, advertising, and labeling. Individuals bought the products due to the representation that each product provided a certain amount of protein. And Defendants guaranteed the goods would conform to the affirmation on the label. *See e.g.*, *In re Beyond Meat*, 718 F. Supp. 3d at 820-21 (denying motion to dismiss breach of express warranty count because a protein content claim on a label is a warranty about the contents of the product); *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, 702 F. Supp. 3d 692, 705-06 (N.D. Ill. Nov. 13, 2023) (allowing warranty claims based on representations that products were "gentle," "natural," and "healthy"); *Bakopoulos v. Mars Petcare US, Inc.*, 592 F. Supp. 3d 759, 766 (N.D. Ill. Mar. 22, 2022) (allowing warranty claims based on defendant's representations that the products were "limited ingredient[s]" and had "no corn, wheat, soy, or chicken").

Defendants only argument regarding unjust enrichment is that it cannot be asserted as a standalone claim. "Under Illinois law, unjust enrichment is not a separate cause of action." *Pirelli Armstrong Tire Corp.*, 631 F.3d at 447. Rather, it is a condition brought about by fraud or other unlawful conduct. *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017). As such, the request for relief based on unjust enrichment is tied to the fate of the consumer fraud claims and will proceed for now. *See e.g.*, *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 740 (7th Cir. 2019).

## Conclusion

For the reasons stated above, Defendants' motion to dismiss [29] is granted in part and denied in part. All seven counts will proceed. However, Plaintiffs have not pled future harm and thus Plaintiffs' request for injunctive relief is dismissed without prejudice. The motion to dismiss is denied in all other respects.

**SO ORDERED.**

Dated: January 10, 2025

_____
Sunil R. Harjani
United States District Judge